**Supreme Court**

No. 2012-110-Appeal.
No. 2012-111-Appeal.
No. 2012-112-Appeal.
(PB 08-6508)
(Dissent begins on page 14)

Retirement Board of the Employees'          :
Retirement System of the City of Providence

                    v.                      :

          Frank E. Corrente                 :
                  and
Angel Taveras, in his capacity as the Mayor of
    the City of Providence (intervenor)
                  and
    the City of Providence (intervenor).

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2012-110-Appeal.
No. 2012-111-Appeal.
No. 2012-112-Appeal.
(PB 08-6508)
(Dissent begins on page 14)

Retirement Board of the Employees'      :
Retirement System of the City of Providence

v.                     :

Frank E. Corrente            :
and
Angel Taveras, in his capacity as the Mayor of
the City of Providence (intervenor)
and
the City of Providence (intervenor).


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** These cases arise from a decision of the Retirement Board of the Employees' Retirement System of the City of Providence (board) to reduce the pension of former city employee Frank E. Corrente. Corrente had been employed by the city during two separate time periods; following a federal investigation known as "Operation Plunder Dome," Corrente was convicted on six criminal charges stemming from his employment during the second time period. Pursuant to the "Honorable Service Ordinance" (HSO), Chapter 17, Article VI, § 17-189.1 of the City of Providence Code of Ordinances (as enacted in 1999),[1] the board voted to reduce Corrente's pension benefits and filed a miscellaneous petition in the

---

[1] The HSO was enacted in 1999 and amended in 2011. This opinion concerns only the pre-2011 version; therefore, we shall simply refer to it as the "HSO."

Superior Court requesting that the court confirm its decision. The mayor and the City of Providence (intervenors) moved to intervene under Rule 24 of the Superior Court Rules of Civil Procedure.[2] After allowing the intervention, a Superior Court justice confirmed the board's decision to reduce Corrente's pension. The intervenors appealed the order of the Superior Court confirming the board's decision, and the board cross-appealed the trial justice's decision granting the intervenors' motion to intervene. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand the matter to the Superior Court with instructions to conduct further proceedings, in the discretion of the trial justice, in a manner consistent with this opinion.

# I

## Facts and Procedural History

The underlying facts in this case are not in dispute. Frank E. Corrente was employed by the City of Providence from June 26, 1967 to April 12, 1987, first as a financial specialist and later as City Controller. Corrente retired in 1987 and began receiving a monthly pension of $1,852.61, based on a gross salary of $42,085.45 and twenty-five years of service. Corrente continued to receive this pension until he returned to employment with the city on December 31, 1990 as the Director of Administration under then-mayor Vincent A. Cianci, Jr.[3] On July 4, 1999, Corrente retired from this second period of employment and at that time began receiving a monthly pension benefit of $5,881.30 based on a gross salary of $91,656.58 and more than thirty-three years of service.

---

[2] The motion to intervene was originally brought by former mayor David Cicilline; in an order entered on May 5, 2011, Cicilline's successor, Mayor Angel Taveras, was substituted as intervenor.

[3] Corrente also served one month as a member of Cianci's transition team.

On June 24, 2002, following a federal investigation, Corrente was convicted of six felony counts, including: conspiracy to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute; violation of the RICO statute; conspiracy to commit bribery; conspiracy to commit extortion; and two counts of attempted extortion. Corrente was sentenced to serve fifty-six months in prison.

On October 23, 2002, the board voted to suspend Corrente's pension benefits, subject to a hearing as to whether his pension should be permanently reduced or revoked. The board appointed Larry J. Ritchie, Professor of Law at Roger Williams University School of Law, to be the independent hearing officer for the matter. On November 2, 2006, Corrente was discharged from prison; thereafter, on December 27, 2007, a hearing was conducted pursuant to the HSO, § 17-189.1(a)(5).

Following the hearing, Prof. Ritchie issued a written report and recommendation to the board. The hearing officer found that all the crimes Corrente committed took place during the second period of his employment. He recommended that the board reduce Corrente's pension by revoking that portion of the benefit that was earned during the second period of employment, leaving the portion based on the first term of employment intact. Further, the hearing officer recommended that the board return the contributions that Corrente had made to the pension during the second period of employment. On August 13, 2008, the board voted to adopt the hearing officer's recommendations.

In accordance with § 17-189.1(a)(5), the board then filed a civil action in Superior Court to confirm its decision to reduce Corrente's pension. The action was styled as a miscellaneous petition, with Corrente named as the respondent. Corrente filed an answer to the board's

miscellaneous petition, in which he also requested that the court confirm the board's decision.[4] On January 29, 2009, the mayor filed a motion to intervene as a matter of right pursuant to Rule 24(a), arguing that the interests of the mayor and the city were not adequately represented in the action. After a hearing on March 13, 2009, the trial justice granted the motion to intervene.

Shortly thereafter, the trial justice ordered that five related cases, including the board's case against Corrente, be consolidated[5] for purposes of addressing three common legal issues of first impression regarding the HSO: (1) whether a criminal conviction was needed before the board was authorized to take action to revoke or reduce municipal pensions pursuant to the HSO; (2) whether the Superior Court had jurisdiction to review civil actions filed by the board pursuant to the HSO; and (3) what was the appropriate standard of review to apply when reviewing civil actions filed by the board pursuant to the HSO. In September 2009, the trial justice issued a decision regarding these issues, finding that: (1) a criminal conviction was not a prerequisite to board action under the HSO; (2) the Superior Court had jurisdiction over civil actions filed by the board pursuant to the HSO under its general equity powers and its declaratory judgment powers; and (3) the appropriate standard of review was the standard used for administrative appeals, as set forth in the Administrative Procedures Act, G.L. 1956 § 42-35-15.

---

[4] Corrente also asserted a counterclaim against the board, in which he referred to the recommendation of the hearing officer that he receive a lump-sum payment for amounts due for the period during which his benefits were suspended, as well as the recommendation that all taxes paid to the City of Providence by him be credited or deducted from any amounts owed by him to the city. He also requested that he not be required to pay back to the city benefits already paid to him between the date of his second retirement and the date when his benefits were suspended.

[5] The consolidated cases included Retirement Board v. Anthony E. Annarino, C.A. No. 02-5196, Retirement Board v. Urbano Prignano, Jr., C.A. 08-5442, Retirement Board v. Kathleen Parsons, C.A. No. 07-2175, Retirement Board v. Frank E. Corrente, C.A. No. 08-6508, and John J. Ryan v. City of Providence, C.A. No. 08-7268. The cases involving Annarino, Prignano, Parsons, and Corrente were brought by the board pursuant to the Honorable Service Ordinance (HSO). The case involving Ryan was a declaratory-judgment action, brought by Ryan, regarding his status under the HSO.

John Ryan, a plaintiff in one of the consolidated cases, appealed to this Court. See Ryan v. City of Providence, 11 A.3d 68, 70 (R.I. 2011). Ryan had filed a declaratory-judgment action against the board to determine his rights under the HSO and had not been convicted of any crimes related to his employment. Id. at 69. On appeal, this Court held that a criminal conviction was a prerequisite to board action under the HSO. Id. at 76. Because the disposition of that suit completely resolved Ryan's case, this Court did not reach the issues of jurisdiction and standard of review. Id.

Following our decision in Ryan, the board filed a motion for summary judgment in the Superior Court. The intervenors opposed the motion and filed a cross-motion for summary judgment. A hearing was held on June 23, 2011 and, thereafter, the trial justice issued a written decision denying the intervenors' motion for summary judgment and granting summary judgment to the board, confirming its decision to reduce Corrente's pension.[6] Judgment was entered on October 18, 2011; the intervenors filed a timely appeal, and the board then filed a timely cross-appeal of the order granting the motion to intervene.[7] Corrente did not file an appeal; consequently, he is not a party before this Court.

On April 3, 2014, this Court issued an order directing the parties to file supplemental briefs addressing the threshold issue of whether the Superior Court was properly vested with subject-matter jurisdiction over this case.[8] After we issued this order, the General Assembly

---

[6] As to Corrente's counterclaim, the court elected to not alter the board's rulings, but also found that "the matter should be returned to the [board] for a proper determination as to the tax credit recommended by Professor Ritchie."

[7] Although a bench decision on the motion to intervene was issued on March 13, 2009, the order granting that motion was not entered until November 28, 2011. The board first filed an appeal of the March 13, 2009 decision, docketed in this Court as No. 2012-111-A., and then a second appeal of the November 28, 2011 order, docketed as No. 2012-112-A. These two appeals of the same decision were then consolidated.

[8] Corrente was also invited to file a supplemental brief on this issue, but he chose not to do so.

enacted a new statute, G.L. 1956 § 36-10.1-5, effective July 8, 2014, titled "Municipal employee pension revocation and reduction," which reads as follows: "The superior court shall have jurisdiction to review any decisions, appeals or other proceedings initiated pursuant to any municipal ordinance providing for the revocation or reduction of the pension of any municipal employee for circumstances constituting dishonorable service as defined by municipal ordinances." The public laws enacting this statute further provide that "[t]his act shall take effect upon passage and shall apply to all pending proceedings under any municipal ordinance as provided herein." P.L. 2014, ch. 497, § 2; P.L. 2014, ch. 526, § 2.

## II

## Standard of Review

We have previously held that "[a] challenge to subject-matter jurisdiction questions the very power of the court to hear the case." In re New England Gas Co., 842 A.2d 545, 553 (R.I. 2004) (quoting Pine v. Clark, 636 A.2d 1319, 1321 (R.I. 1994)). Subject-matter jurisdiction "may not be waived by any party and may be raised at any time in the proceedings." Id. (quoting Pine, 636 A.2d at 1321). Furthermore, "[b]ecause subject-matter jurisdiction is an indispensable ingredient of any judicial proceeding, it can be raised by the court sua sponte." Sidell v. Sidell, 18 A.3d 499, 504 (R.I. 2011). "We review 'de novo whether a court has subject-matter jurisdiction over a particular controversy.'" Id. (quoting Long v. Dell, Inc., 984 A.2d 1074, 1078 (R.I. 2009)).

## III

## Discussion

Pursuant to the Rhode Island Constitution, the Superior Court obtains its jurisdiction from statutes enacted by the General Assembly. The constitution provides: "The judicial power

of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish." R.I. Const., art. 10, sec. 1. The constitution further provides that "[t]he inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law." Id. at sec. 2. Because the Superior Court "is statutory in its origin," its powers "are defined by statute and cannot be extended by judicial interpretation." Boss v. Sprague, 53 R.I. 1, 3, 162 A. 710, 711 (1932).

In the instant case, the board filed its miscellaneous petition pursuant to § 17-189.1(a)(5), a city ordinance, which provides:

> "Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted. If the retirement board determines that revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted, the retirement board shall initiate a civil action in the superior court for the revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under [this chapter]." Section 17-189.1(a)(5) (as enacted 1999) (emphasis added).

The HSO, a municipal ordinance, could not confer jurisdiction on the Superior Court for the "civil action" that the board was required to file in order to effectuate the reduction of Corrente's pension. See Advisory Opinion to the Governor, 437 A.2d 542, 543 (R.I. 1981); Higgins v. Tax Assessors of Pawtucket, 27 R.I. 401, 403-04, 63 A. 34, 35 (1905). Accordingly, if the Superior Court had jurisdiction over this action, the jurisdiction must have originated from a source other than the ordinance itself.

In his 2009 decision regarding common legal issues of first impression, the trial justice found that the Superior Court had subject-matter jurisdiction over the board's miscellaneous petition pursuant to its general equity powers and its authority to issue declaratory judgments. In their supplemental briefs, the board and the intervenors are in agreement that the Superior Court had jurisdiction over this case; in support of this contention, the parties present essentially identical arguments. First, they contend that the court was vested with jurisdiction pursuant to the newly enacted statute, § 36-10.1-5, because that statute applies to all "pending proceedings under any municipal ordinance." As an alternative, they mirror the trial justice's findings that the court had jurisdiction pursuant to its equity and declaratory-judgment powers. We shall address each of these potential avenues for jurisdiction in turn.

## A

### Equity and Declaratory-Judgment Jurisdiction

General Laws 1956 § 8-2-13 provides: "The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity * * * ." We have previously held that the Superior Court "is a court of general equitable jurisdiction * * * ; although its jurisdiction is not limitless, the Superior Court possesses, as a matter of fundamental judicial power, the jurisdiction to hear and confront the merits of any case wherein the power of determination has not been specifically conferred upon another tribunal." La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights, 419 A.2d 274, 279 (R.I. 1980). While the Superior Court's jurisdiction over matters of equity is broad, a litigant must seek or be entitled to some form of recognized equitable relief in order to invoke this jurisdiction. See Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 318-19 (1999); Martin

- 8 -

v. James B. Berry Sons' Co., 83 F.2d 857, 859 (1st Cir. 1936); see also John Norton Pomeroy, 1 Equity Jurisprudence § 62 at 82-83 (5th ed. 1941) ("a court of equity will not, unless perhaps in some very exceptional case, assume jurisdiction over a controversy the facts of which do not bring it within some general principle * * * of the equitable jurisprudence").

In his 2009 decision, the trial justice stated that the Superior Court had historically "exercised its broad general equity jurisdiction over municipal pension disputes," and found that the enactment of Providence's Home Rule Charter, the creation of the retirement board, and the enactment of the HSO did not divest the court of this "previously existing" jurisdiction. We do not deny that the Superior Court has previously adjudicated municipal pension disputes pursuant to its equity jurisdiction; however, we are unaware of any such case that was not brought by an aggrieved plaintiff seeking a traditional equitable remedy or declaratory relief. See, e.g., Trice v. City of Cranston, 110 R.I. 724, 725-26, 297 A.2d 649, 650 (1972) (declaratory-judgment action brought by city firefighters regarding their entitlement to reduction in eligibility time required for longevity pensions); Marro v. General Treasurer of Cranston, 108 R.I. 192, 193, 273 A.2d 660, 661 (1971) (petition for writ of mandamus brought by a city police lieutenant regarding the amount of his pension following involuntary retirement); Beebe v. Fitzgerald, 106 R.I. 650, 651-52, 262 A.2d 625, 626 (1970) (city police officer challenging the amount of his pension award following retirement pursuant to statutory scheme). In our opinion, it was not the classification of "municipal pension disputes" that vested the Superior Court with jurisdiction in these cases. Rather, these were cases brought by plaintiffs seeking known equitable remedies; the actions merely happened to have in common that each dispute involved an employee's rights regarding his or her pension benefits.

Here, in contrast, we are presented with an entirely unique procedural posture. In its miscellaneous petition, the board did not seek an injunction or any other variety of known equitable relief; it merely requested that the court "enter an order confirming the August 13, 2008 Decision of the Retirement Board." Furthermore, the miscellaneous petition was brought by the board—not Corrente—pursuant to the explicit mandate in § 17-189.1(a)(5), in order for the board to effectuate its own decision to reduce Corrente's pension. The board was not an aggrieved party in this situation, asking the court to use its equitable powers to right a wrong; rather, it was taking the affirmative action of reducing Corrente's pension, on the basis of dishonorable service, in the manner specifically prescribed by the Providence City Council. Thus, while this action does involve a municipal pension, it is distinguishable from previous cases in which the Superior Court has adjudicated pension disputes pursuant to its general equity jurisdiction. Although the principles of equity are flexible by nature, we cannot say that this miscellaneous petition—clearly brought pursuant to the HSO and not seeking an equitable remedy—properly invoked the court's equity jurisdiction.

Regarding declaratory-judgment jurisdiction, the trial justice found that, because the HSO was "silent on the issue of judicial review," the Superior Court had subject-matter jurisdiction pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-2,[9] to "adjudicate matters relating to the rights, status, or other legal relations of any person that may be affected by a particular statute or municipal ordinance." However, the board was clearly not seeking

---

[9] General Laws 1956 § 9-30-2 provides:
> "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

declaratory relief. The board did not bring suit in Superior Court in order to determine its rights under the HSO; it brought suit to confirm its decision to reduce Corrente's pension, as specifically provided by the terms of the HSO.

Thus, we are of the opinion that this matter did not properly invoke either the equity jurisdiction or declaratory-judgment jurisdiction of the Superior Court. The petition was brought pursuant to the HSO, in order to obtain the specific relief required by the language of that ordinance. Whether the drafters of the HSO considered the issue of jurisdiction when creating the civil action requirement, we do not know. What is clear is that in our opinion, the language of the ordinance, and the board's corresponding action in this case, cannot fairly be construed as a prayer for equitable relief or a request for declaratory judgment. We decline to interpret the board's action as something that it was not.[10]

**B**

**General Laws 1956 § 36-10.1-5**

The newly minted § 36-10.1-5, titled "Municipal employee pension revocation and reduction," became effective on July 8, 2014, just three months after the issuance of this Court's order directing the parties in this case to address the question of subject-matter jurisdiction. This

---

[10] The Superior Court also has general jurisdiction of actions at law, pursuant to G.L. 1956 § 8-2-14, which provides in part:

> "(a) The superior court * * * shall have exclusive original jurisdiction of all * * * actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars ($10,000); and shall also have concurrent original jurisdiction with the district court in all other actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000) * * * ."

Here, the board was not seeking damages from Corrente, and it did not state a legal cause of action in its miscellaneous petition. None of the parties in the instant case, nor the trial justice, have suggested that the court had jurisdiction over the board's miscellaneous petition pursuant to § 8-2-14. We agree that this statute did not confer jurisdiction over this case.

- 11 -

statute, which adds yet another layer of uniqueness to the sui generis posture of this action, provides in full: "The superior court shall have jurisdiction to review any decisions, appeals or other proceedings initiated pursuant to any municipal ordinance providing for the revocation or reduction of the pension of any municipal employee for circumstances constituting dishonorable service as defined by municipal ordinances." Section 36-10.1-5. Additionally, the public laws enacting this statute provide that "[t]his act shall take effect upon passage and shall apply to all pending proceedings under any municipal ordinance as provided herein." P.L. 2014, ch. 497, § 2; P.L. 2014, ch. 526, § 2. This new statute undoubtedly confers jurisdiction on the Superior Court for all future cases brought pursuant to the HSO; the pertinent question at the present time, however, is whether—and in what manner—the statute applies to the case currently before us on appeal.

In their supplemental briefs submitted to this Court on the issue of subject-matter jurisdiction, both the board and the intervenors argue that, because the new statute applies to "all pending proceedings," and because the case is currently pending before this Court, the statute solves the problem of whether the Superior Court had subject-matter jurisdiction to adjudicate the board's miscellaneous petition. Unfortunately, the parties' rationale in this regard overlooks a crucial fact. Namely, the Superior Court issued its final judgment in this case on October 18, 2011, whereas the new statute did not become effective until July 8, 2014.[11]

We have previously held that "[a]s a general rule a statute is presumed to operate prospectively and not retrospectively, unless it appears by clear, strong language or by necessary

---

[11] Furthermore, the present appeals were docketed in this Court on April 2, 2012, and April 3, 2012, at which point this Court obtained sole jurisdiction of the matter from the Superior Court. See Article I, Rule 11(f) of the Supreme Court Rules of Appellate Procedure ("From the time of the docketing of an appeal in the Supreme Court, said Court shall have exclusive jurisdiction to supervise the further course of such appeal * * * .").

implication that the Legislature intended to give the statute retroactive force and effect." State v. Healy, 122 R.I. 602, 606, 410 A.2d 432, 434 (1980).  Here, the statutory language is silent on the issue of retroactivity, and the public law states that the act "shall take effect upon passage and shall apply to all pending proceedings." P.L. 2014, ch. 497, § 2; P.L. 2014, ch. 526, § 2 (emphasis added).  In our opinion, this language does not suggest intent to give the statute retroactive effect; rather, it states clearly that the statute was to become effective upon passage, which date was July 8, 2014.

Although we think it is clear that the Legislature did not intend § 36-10.1-5 to apply retroactively, it appears equally obvious that the language "all pending proceedings" was intended to encompass this particular case.  We construe the General Assembly's timing in enacting this statute—three months after our order regarding jurisdiction—to be more than coincidental.  Moreover, Black's Law Dictionary defines "pending" as "[r]emaining undecided; awaiting decision";[12] applying this plain meaning, it is clear that the new statute applies to this case because, when the statute was passed on July 8, 2014, the case was awaiting decision by this Court.  Thus, we are of the opinion that, although the statute confers jurisdiction to the Superior Court over this particular action, it does not remedy the fact that the Superior Court did not have jurisdiction when it adjudicated the matter and issued its final judgment in 2011.

Accordingly, because this case was brought pursuant to the HSO and was adjudicated in the Superior Court prior to the enactment of § 36-10.1-5, we are constrained to hold that the Superior Court lacked subject-matter jurisdiction and that the final judgment is therefore void. We also hold, however, that the Superior Court has now been vested with jurisdiction over this case.  Given the utterly unique posture of this action, we shall remand the matter to the Superior

---

[12] Black's Law Dictionary 1314 (10th ed. 2014).

- 13 -

Court, which now has jurisdiction pursuant to § 36-10.1-5. Upon remand, the court may conduct further proceedings based upon the record before the court, or, in its discretion, the court may simply re-enter its previous judgment.

## IV

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court and remand the case to the Superior Court with instructions to proceed in a manner consistent with this opinion.

**Justice Robinson, dissenting.** I respectfully but vigorously dissent from the majority's holding to the effect that the Superior Court lacked subject matter jurisdiction ab initio. In my judgment, there has existed at all relevant times a fully sufficient statutory basis for such jurisdiction.

It is my considered opinion that the Superior Court was vested with subject matter jurisdiction from the moment that the instant civil action was originally commenced; it was so vested by virtue of the general equity jurisdiction with which the Superior Court is endowed pursuant to G.L. 1956 § 8-2-13. In lapidary and straightforward language, § 8-2-13 provides in pertinent part as follows:

> "The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity * * * ."

It should be borne in mind that this Court has specifically stated that the Superior Court "is a court of general equitable jurisdiction." La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights, 419 A.2d 274, 279 (R.I. 1980). In that same opinion, Justice Weisberger (writing for a unanimous Court) went on to state in expansive language that, although the jurisdiction of the Superior Court is not "limitless," it is nonetheless true that the "Superior Court possesses, as a matter of fundamental judicial power, the jurisdiction to hear and confront the merits of any case wherein the power of determination has not been specifically conferred upon another tribunal." Id. (emphasis added).

It is true that the "confirmation" sought by the Board is not one of the usual arrows in the Chancelor's quiver, but it is certainly a close cousin to such traditional equitable remedies as injunctions and specific performance.[1] I would note in this regard that § 8-2-13 is worded very broadly and is noticeably devoid of limiting language; it quite liberally confers exclusive original jurisdiction on the Superior Court with respect to (inter alia) "suits and proceedings of an equitable character."

I believe that the case before us is truly the type of case contemplated by Chief Judge Cardozo, when he wrote:

---

[1]  I do not think that the somewhat amorphous "adequate remedy at law" maxim relative to the granting of equitable relief should be a barrier to relief in this case. In view of the tortuous path that this case has followed to date, it does not seem just or equitable to require that yet more time must elapse before there be a final recovery. See K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989) ("The necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies."); see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000); Almond v. Capital Properties, Inc., 212 F.3d 20, 25 (1st Cir. 2000).

- 15 -

> "Let the hardship be strong enough, and equity will find a way,
> though many a formula of inaction may seem to bar the path."
> Graf v. Hope Building Corp., 171 N.E. 884, 888 (N.Y. 1930)
> (Cardozo, C.J., dissenting).[2]

In the same vein, I am deeply impressed by the following words penned by the Supreme Court of Nebraska, summarizing a fundamental principle relative to the jurisdiction of a court sitting in equity:

> "Equity looks through form to substance. Thus, a court of equity
> goes to the root of the matter and is not deterred by form."
> Huffman v. Peterson, 718 N.W.2d 522, 528 (Neb. 2006).

I am unequivocally convinced that following the statutorily established "general equity jurisdiction" route in this case (a case which all members of the Court agree is sui generis and unique) would do no harm whatsoever to our existing jurisprudence. I think that the breadth of jurisdiction that is granted by § 8-2-13 is easily great enough to accommodate this rather unusual case.

In my judgment, this Court should be extremely wary about closing to any extent the door which has traditionally been wide open—viz., the door to Equity. I respectfully submit that the Court's opinion in this case will inevitably engender uncertainty as to where equitable jurisdiction begins and where it ends.

I am impressed in this regard by the following language of the Supreme Judicial Court of Maine in the case of Unity Telephone Co. v. Design Service Company of New York, Inc., 179 A.2d 804, 811 (Me. 1962):

---

[2] Equally pertinent is the observation of Judge Jerome Frank concerning "the inestimably valuable flexibility and capacity for growth and adaption to newly emerging problems which the principles of equity have supplied in our legal system." Bereslavsky v. Caffey, 161 F.2d 499, 500 (2d Cir. 1947).

- 16 -

> "The absence of precedents, or novelty in incident, presents no obstacle to the exercise of the jurisdiction of a court of equity, and to the award of relief in a proper case.  It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties."  (Internal quotation marks omitted.)

Because it is my opinion that jurisdiction has at all pertinent times been present and the majority is following an unnecessarily serpentine route with respect to a case that will in all likelihood come back before us, I respectfully but unreservedly dissent.



**TITLE OF CASE:** Retirement Board of the Employees' Retirement System of the City of Providence v. Frank Corrente and Angel Tavares, in his capacity as the Mayor of the City of Providence (intervenor) and the City of Providence (intervenor).

**CASE NO:** No. 2012-110-Appeal.
No. 2012-111-Appeal.
No. 2012-112-Appeal.
(PB 08-6508)

**COURT:** Supreme Court

**DATE OPINION FILED:** March 9, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiff: Raymond A. Marcaccio, Esq.

For Defendant: John D. Plummer, Esq.